LOVELL EAMES *vs.* THE NEW ENGLAND WORSTED COMPANY.

Upon a complaint filed by a land owner, pursuant to the Rev. Sts. *c*. 116, § 4, to recover compensation for injury done to his land, by its being overflowed or otherwise injured by a mill dam, he cannot recover damages arising from offensive smells, proceeding from the flowed land, when the water is drawn off, whereby his contiguous land is rendered less valuable for building lots.

The Rev. Sts. *c*. 116, afford to a mill owner no warrant or excuse for causing or continuing a nuisance on his own land or the land of another.

SHAW, C. J. This was a common complaint under the mill act, (Rev. Sts. *c*. 116,) for damage done to the complainant's 'and by the erection of a mill dam by the respondents,

Eames *v.* New England Worsted Co.

In addition to the direct damage done to the complainant's land by the action of water, either by flowing over it and preventing or destroying grass and other products, or by being absorbed into and percolating through it, under the surface, so as to render it less productive, the complainant offered evidence, before the sheriff's jury, to prove that the flowed land, when the water was drawn off, emitted noxious and offensive smells, and thus occasioned damage to lands of the complainant, other than those flowed or rendered unproductive, but contiguous or adjacent thereto; by reason whereof, the value of such other lands, for building lots, was diminished. This evidence, though objected to, was admitted by the sheriff.

The manifest object of this remedial statute is, to secure to a land owner, whose land has been flowed, or directly damaged by water raised, by a dam for mill purposes, by another, on his own land, a fair and adequate compensation for that damage, arising directly from that cause. The law does not justify an allowance for remote, possible, or speculative damages, or damage to any other subject than land, or by any other means than raising water by a dam for mill purposes. *Palmer Company* v. *Ferrill*, 17 Pick. 58. Taking this to be the settled rule in assessing damages, the court are of opinion that the damage sought to be recovered in this case, and sanctioned by the sheriff by his admission of the evidence, was too remote and contingent. The rule admits all direct damage, by raising water upon a complainant's land, as preventing all valuable growth, or by saturating it, so as to render it unfit to produce good grass; by separating one part of the complainant's land from another, so as to render bridges or causeways necessary; or other direct damage. But this complainant seeks, further, to recover for damage done to other lands, uplands not reached or affected by the water raised by the dam, but in consequence of noxious and offensive smells, proceeding from the land flowed, when not covered by water, by means of which such uplands are rendered less eligible and valuable as building lots. It is too remote, and not within the scope of the mill act.

One mode of testing this is to suppose a case where the meadow, and the adjacent upland affected by offensive smells, instead of belonging to the same proprietor, are held by different owners. Close No. 1 belongs to A. and No. 2 to B. The former is meadow and flowed. The latter is upland, so elevated and so distant, that it is not reached, directly or indirectly, by water, but, in consequence of its vicinity to the flowed land, it is affected by offensive smells, and is thereby rendered less desirable for building lots. It appears to us clear, that B. could have no remedy under the mill act. This land is not damaged by being flowed. And we think the result cannot be different, when both parcels of land belong to one proprietor.

But if it be asked whether such a proprietor is entirely without remedy, we think the answer is plain. If the damage done be of such a nature as to amount to a nuisance, either public or private, the party injured has his remedy at law. If it is not a nuisance, it is *damnum absque injuria*, which such an owner suffers in common with owners of real estate generally so situated.

In order to amount to a nuisance, it is not necessary that the corruption of the atmosphere should be such as to be dangerous to health; it is sufficient that the effluvia are offensive to the senses, and render habitations uncomfortable. *Rex* v. *White*, 1 Bur. 333. *Rex* v. *Cross*, and *Rex* v. *Neil*, 2 Car. & P. 483, 485. The mill act affords no warrant or excuse for erecting or continuing a nuisance. It simply authorizes a certain limited use of the land of another, for a special purpose, (paying damages therefor,) as if it were his own. But if it were his own, he could not erect or continue a nuisance upon it, to the injury of the public, or of any individual. *Rex* v. *Neil*, above cited. *Staple* v. *Spring*, 10 Mass. 72. If it be a public nuisance, the party erecting or continuing it may be prosecuted by indictment; and a part of the judgment will be, that it be prostrated and removed. If it be a private nuisance, the party injured may have his action upon the case, against the party erecting or keeping it

up, and, on recovering judgment, may have a writ to the sheriff, commanding him to abate and remove the nuisance; and on a second suit for a continuance or repetition of the nuisance, the plaintiff is entitled, as of right, to a judgment for the abatement or removal of the nuisance, and to a warrant for carrying it into effect. Rev. Sts. *c.* 106, §§ 1, 4.

If it is neither a public nor private nuisance, the flowing of his land, with its consequences, is the exercise of a right, of which every owner of real estate may avail himself, to use his land to his own best advantage, subject only to this limitation, that he shall not use it to the injury of others.

*Verdict set aside, and a new trial ordered.*

*Fletcher & Train,* for the respondents.

*Mellen,* for the complainant.